Gary REEVES, Plaintiff-Appellee,

v.

Jim McCONN, in his official capacity as Mayor of the City of Houston, Defendant-Appellant.

No. 78-3570.

United States Court of Appeals, Fifth Circuit.

March 2, 1981.

---

John G. Lione, Jr., Charles M. Williams, Robert J. Collins, Asst. City Attys., Houston, Tex., for defendant-appellant.

Matthew Horowitz, Houston, Tex., for plaintiff-appellee.

ON PETITION FOR REHEARING AND
PETITION FOR REHEARING
EN BANC

(Opinion November 24, 1980, 5 Cir. 1980, 631 F.2d 377).

Before RUBIN, HENDERSON and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

After our opinion in *Reeves v. McConn*, 631 F.2d 377 (5th Cir. 1980), Reeves has submitted a petition for rehearing that raises two arguments against our approval of subparagraph 3 of the Houston sound amplification ordinance. We will expand upon the discussion contained in part II.D. of our main opinion without changing the reasoning or result.

Subparagraph 3 of the Houston ordinance prohibits the amplification of words or sounds that are "obscene," with no further definition of that term. Reeves argued, and the district court held, that the ordinance could only prohibit "erotic" words and sounds relating to hard-core sexual conduct, under the Supreme Court's decision in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). We rejected this narrow view of the state's constitutional authority to regulate amplified obscenity by drawing an analogy to the broadcast media, an area in which the Supreme Court has affirmed much broader regulatory authority. *F. C. C. v. Pacifica Foundation*, 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978). On petition for rehearing, Reeves argues that our reliance on *Pacifica* is misplaced because the broader governmental power over broadcast media is based upon the fact that radio and television intrude into the privacy of the home, where "the individual's right to be left alone plainly outweighs the First Amendment rights of an intruder." *Pacifica*, 438 U.S. at 748, 98 S.Ct. at 3040.

We do not agree with the argument for two reasons: because amplified speech also intrudes into the home, and because *Pacifica* does not draw a rigid line at the front door of the home. When an unwilling listener faces an amplified and offensive speaker, the judicial task in allocating rights between the two is one of *balance*, and although the threshold of the listener's home is an important line, it is not absolute. For example, we said in *Reeves* that even in the privacy of his home a citizen has no right to be protected from amplified speech that does not rise above the level of noise generally characteristic of a given area. 631 F.2d at 385. Certain traffic noises frequently intrude into private homes during normal daytime activity, and, therefore, reasonably amplified speech

could also. Thus amplified speech may intrude into the home of an unwilling listener exactly as does broadcast speech, and the state may therefore prohibit obscene, indecent, or profane language in both forms of expression. *Pacifica*, 438 U.S. at 748–51, 98 S.Ct. at 3039–41. In fact, the state's regulatory interest is probably weightier in relation to amplified speech for the simple reason that the unwilling listener cannot turn it off.

■ The state's interest in protecting the unwilling listener and his family does not completely vanish when they leave their home and enter the public streets. We repeat that our task is one of balancing competing rights. On one hand, we agree that a citizen using the public streets must often expect to divert his path or his attention in order to avoid offensive spoken words. *Pacifica*, 438 U.S. at 749 n.27, 98 S.Ct. at 3040 n.27. On the other hand, the speaker who wishes to *amplify* obscene or indecent speech wins that additional right only at the cost of depriving offended listeners and their children of a reasonable means of avoidance. A sensible balance of these competing rights is to protect the speaker of obscene or indecent words only when he uses the unamplified voice, so that the unwilling listener may have a reasonable means of avoidance, whether in his home or on the streets. The Supreme Court has said that "outside the home, the balance between the offensive speaker and the unwilling audience *may sometimes* tip in favor of the speaker." *Pacifica*, 438 U.S. at 749 n.27, 98 S.Ct. at 3040 n.27 (emphasis added). On the narrow issue before us, the balance tips in favor of the unwilling audience, and the city may require a speaker to forgo amplification if he wishes to use obscenities.

The petition for rehearing also asks that we reconsider our holding that the mere word "obscene" in the statute is not unconstitutionally vague. *Reeves*, 631 F.2d at 387. Petitioner argues that our authority

for this holding, *Roth v. United States*, 354 U.S. 476, 491–92, 77 S.Ct. 1304, 1312–13 (1957), avoided the vagueness issue by construing the term in light of the then-prevailing constitutional standard of obscenity. Petitioner reasons that because the Supreme Court has found the term not to be unconstitutionally vague only after it was construed narrowly under *Miller* or a similar test, we should not both (1) give the term a broader reach than the *Miller* definition and (2) find it not vague.

■ The Supreme Court rejected vagueness challenges to similar federal statutes before *Miller* was decided, and specifically affirmed those decisions after *Miller* in *Hamling v. United States*, 418 U.S. 87, 110–14, 94 S.Ct. 2887, 2904–06 (1974). Thus the vagueness of the term "obscene" has been decided independently of the particular definitions it is given under the First Amendment. *Hamling* and many other obscenity cases make it clear that statutory terms such as "obscene" or "indecent" are not unconstitutionally vague if they are written or construed to conform to the requirements of the First Amendment appropriate to the medium being regulated. *Id.* See also *Pacifica*, 438 U.S. at 739–41 and n.17, 98 S.Ct. at 3035–36 and n.17. With regard to *printed* obscenity, the constitutional limits of state or federal regulations were set out in *Miller*: patently offensive representations or descriptions of hard-core sexual conduct. 413 U.S. at 25, 93 S.Ct. at 2615. But in the context of *broadcast* speech, the limits set by the First Amendment are much broader. Such speech may be prohibited if it is obscene, indecent, or even profane.[1] *Pacifica*, 438 U.S. at 747–752, 98 S.Ct. at 3039–41. We have extended the reasoning of *Pacifica* to cover amplified speech as well. *Reeves*, 631 F.2d at 387. Therefore the term "obscene" in the Houston ordinance is not unconstitutionally vague if it is construed at least within the limits approved in *Pacifica*. Of course, we have no authority to construe the municipal

---

1. *Pacifica* affirmed the constitutionality of a specific federal statute relating to broadcast speech and using these three terms. It did not

set the outer limits of state and federal regulation of broadcast speech in general terms, as did *Miller* in relation to printed obscenity.

ordinance ourselves. But we cannot imagine a state court construing subparagraph 3 more broadly than the wide range of regulation approved by *Pacifica,* so we have no reason to question the statute further. We may only identify the boundaries set by the federal constitution, and any likely construction of this subparagraph is well within them.

Should the city see fit to adopt a new ordinance using the term "obscene," it may expressly amplify and define that term so as to meet federal constitutional standards. The ordinance without such explicit interpretation may be interpreted by the state courts in such a way as to incorporate those standards. Neither of those questions is presented to us now, and we do not attempt to cross the bridge of possible unconstitutionality in the event neither occurs.

The Petition for Rehearing is DENIED and, no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 16), the Petition for Rehearing En Banc is DENIED.