STATE OF NORTH CAROLINA v. SCOTT AARON GARREN

---

STATE OF NORTH CAROLINA v. MARK STEVEN DENNY

No. 9330SC1029

No. 9330SC1034

(Filed 20 December 1994)

**Counties § 91 (NCI4th); Municipal Corporations § 328 (NCI4th)— county noise ordinance—one section overbroad and unconstitutional—one section constitutional and enforceable**

A provision of a county noise ordinance declaring any singing, yelling, or playing of any radio, amplifier, musical instrument, phonograph, loudspeaker or other device producing sound to be a "loud, raucous and disturbing noise" in violation of the ordinance regardless of the level of sound or actual impact upon a person was unconstitutionally overbroad. However, a provision of the ordinance prohibiting any "loud, raucous and disturbing noise" which is defined as any sound which "annoys, disturbs, injures or endangers the comfort, health, peace or safety of reasonable persons of ordinary sensibilities" was valid and separable from the unconstitutional provision.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 443 et seq.**

Appeal by the State from order entered 4 August 1993 in Jackson County Superior Court by Judge Julia V. Jones. Heard in the Court of Appeals 7 June 1994.

*W. Paul Holt, Jr., P.A., by W. Paul Holt, Jr. and B. David Steinbicker, Jr., for State-appellant.*

*Haire, Bridgers & Spiro, P.A., by R. Phillip Haire, for defendant-appellee Mark Steven Denny.*

*No brief filed by defendant Scott Aaron Garren.*

STATE v. GARREN

[117 N.C. App. 393 (1994)]

GREENE, Judge.

The State of North Carolina (the State) appeals from an order entered by Superior Court Judge Julia V. Jones on 4 August 1993, affirming the 27 May 1993 orders of District Court Judge Steven J. Bryant, declaring Section 1-1(b)(3) of the Jackson County Noise Ordinance unconstitutional and dismissing charges brought against Mark Steven Denny (Denny) and Scott Aaron Garren (Garren). *See* N.C. R. App. P. 40 (1994) (this Court may consolidate cases which involve common questions of law).

The Jackson County Board of Commissioners adopted a noise ordinance on 2 December 1991 which provides in pertinent part:

Section 1-1. Loud, Raucous and Disturbing Noise.

    (a) It shall be unlawful for any person or group of persons, regardless of number, to willfully make, continue or cause to be made or continue any loud, raucous and disturbing noise, which term shall mean any sound which, because of its volume level, duration and character, annoys, disturbs, injures or endangers the comfort, health, peace or safety of reasonable persons of ordinary sensibilities within the limits of the County of Jackson. The term loud, raucous and disturbing noise shall be limited to loud, raucous and disturbing noises heard upon the public streets, in any public park, in any school or public building or upon the grounds thereof while in use, in any church or hospital or upon the grounds thereof while in use, upon any parking lot open to members of the public as invitees or licensees, or in any occupied residential unit which is not the source of the noise or upon the grounds thereof.

    (b) In addition to the common meaning of words, the following definitions shall be used in interpreting this ordinance and the following acts, among others, **are declared to be loud, raucous and disturbing noises in violation of this ordinance**, but said enumeration shall not be deemed to be exclusive: . . .

    (3) Radios, amplifiers, phonographs, group gatherings, etc. Singing, yelling, or the using, operating or permitting to be played, used or operated any radio, amplifier, musical instrument, phonograph, interior or exterior loudspeak-

ers, or other device for the producing or reproducing of sound in such manner as to cause loud, raucous and disturbing noise.

Jackson County, N.C., Noise Ordinance art. I, §§ 1-1(a), (b)(3) (1991).

On 12 November 1992, Denny was charged with violating the noise ordinance "by playing sterio [sic] to [sic] loud." On 22 March 1993, Denny made a motion to dismiss the charge as unconstitutionally vague, indefinite and ambiguous in that the noise ordinance "does not allege an offense," "fails to adequately charge [Denny] with any offense against the laws of the State of North Carolina and ordinances of the County of Jackson," "does not apprise [Denny] of the charge against him with sufficient specificity to permit him to adequately prepare a defense," and "deprive[s] [Denny] of the rights guaranteed to him under the due process clause of the Fifth Amendment and under that clause of the Sixth Amendment guaranteeing to a Defendant the right to be informed of the nature and cause of the accusation." On 27 May 1993, Judge Bryant declared Section 1-1(b)(3) of the noise ordinance unconstitutional and allowed Denny's motion to dismiss.

On 3 April 1993, Garren was charged with violating the noise ordinance by having "a live band outside of residance [sic] playing very loud causing a disturbance to the neighbors." Before trial, Garren made an oral motion to dismiss. Judge Bryant declared Section 1-1(b)(3) unconstitutional and allowed Garren's motion on 19 April 1993. The State appealed to Jackson County Superior Court, contending "the Noise Ordinance is not unconstitutionally vague" and requesting "the matter be reviewed as provided by law."

---

The issue presented is whether Section 1-1(b)(3) of Jackson County's noise ordinance is unconstitutional where the ordinance declares that certain sounds are, as a matter of law, "loud, raucous and disturbing" noises and therefore violative of the ordinance.

Jackson County, pursuant to N.C. Gen. Stat. § 153A-133, enacted a noise ordinance on 2 December 1991. See N.C.G.S. § 153A-133 (1991) ("county may by ordinance regulate, restrict, or prohibit the production or emission of noises or amplified speech, music, or other sounds that tend to annoy, disturb, or frighten its citizens"). Noise ordinances present a great deal of problems in drafting and enforcing them because "[t]he nature of sound makes resort to broadly stated definitions and prohibitions not only common but difficult to avoid."

*People v. New York Trap Rock Corp.*, 442 N.E.2d 1222, 1226 (N.Y. 1982). A court may forbid enforcement of a noise statute or ordinance for overbreadth where it "reaches more broadly than is reasonably necessary to protect legitimate state interests" "at the expense of First Amendment freedoms." *Reeves v. McConn*, 631 F.2d 377, 383 (1980), *reh'g denied*, 638 F.2d 762 (5th Cir. 1981). As the Fifth Circuit explained in *Reeves*,

> most citizens desire protection from unreasonable or disruptive levels of noise on the streets and from uninvited noise within the privacy of their homes. We say nothing today that prevents the city from granting that protection. When the city fears disruption, it may prohibit conduct that actually causes, or imminently threatens to cause, material and substantial disruption of the community or invasion of the rights of others. Or the city may reasonably prohibit kinds or degrees of sound amplification that are clearly incompatible with the normal activity of certain locations at certain times. But the city may not broadly prohibit reasonably amplified speech merely because of an undifferentiated fear that disruption might sometimes result. When First Amendment freedoms are involved, the city may protect its legitimate interests only with precision.

*Reeves*, 631 F.2d at 388. Music, be it singing, from the radio, played on a phonograph, etc., falls within these protected freedoms. *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 L. Ed. 2d 671 (1981). An ordinance which is overbroad, however, may be upheld as valid where it has "been afforded a narrowing construction by the state courts sufficient to limit its application to unprotected expression" or "the provision is readily susceptible to such an interpretation." *Fratiello v. Mancuso*, 653 F. Supp. 775, 791 (D.R.I. 1987); *see Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 86 L. Ed. 1031 (1942) (Court upheld statute prohibiting use of "offensive, derisive or annoying word[s]" in public because New Hampshire Supreme Court had construed statute to forbid only "fighting words").

In this case, Section 1-1(b) of Jackson County's noise ordinance attempts to give some examples and definitions as to what constitutes the "loud, raucous and disturbing" noise which is prohibited in Section 1-1(a) by "declaring" certain acts to be "loud, raucous and disturbing noises in violation of this ordinance." Although the ordinance therefore addresses a matter within the county's power to regulate, Section 1-1(b)(3) is drafted too broadly to be upheld as constitution-

al. Section 1-1(b)(3) seeks to ban any singing, yelling, or the playing of any radio, amplifier, musical instrument, phonograph, loudspeakers, or other device producing sound regardless of their level of sound or actual impact on a person. Therefore, at the expense of First Amendment freedoms, Section 1-1(b)(3) "reaches more broadly than is reasonably necessary to protect legitimate state interests," has not been given a narrowing construction, and is not readily susceptible to a narrow interpretation. *See Moore v. City of Gulf Shores*, 542 So. 2d 322 (Ala. Crim. App. 1988) (noise ordinance defining unreasonable noise as playing of any musical instrument, appliance, amplifier, loudspeaker, or sound reproduction device as to result in sound being projected off premises so as to be audible in any residential district at any time overbroad); *Fratiello*, 653 F. Supp. 775 (forbidding all "unnecessary noises or sounds . . . which are physically annoying to persons" unconstitutionally overbroad because it extends beyond narrowly-defined classes of unprotected expression, has not been given narrowing construction, and is not necessary to further state interests); *Phillips v. Folcroft*, 305 F. Supp. 766 (E.D. Pa. 1969) (ordinance defining disorderly conduct to include "making of loud and/or unnecessary noises" unconstitutionally overbroad in impinging on free speech and vague in leaving to officials unlimited discretion in choosing who makes "unnecessary" noises). For these reasons, the district court correctly held Section 1-1(b)(3) to be unconstitutional, and we need not address the arguments made that Section 1-1(b)(3) is unconstitutionally vague.

The constitutional infirmity of Section 1-1(b)(3), however, does not require the entire noise ordinance to be declared unconstitutional because Section 1-1(a) is constitutionally valid and separable from Section 1-1(b)(3) and may therefore be given effect. *Decker v. Coleman*, 6 N.C. App. 102, 108, 169 S.E.2d 487, 491 (1969) (constitutional provisions of statute which are separable from unconstitutional provision of same statute will be given effect). Section 1-1(a) does not reach more broadly than is reasonably necessary to protect legitimate state interests and defines "loud, raucous and disturbing" noise as any sound which "annoys, disturbs, injures or endangers the comfort, health, peace or safety of reasonable persons of ordinary sensibilities." Because of this objective standard for measuring what noise is prohibited, Section 1-1(a) is not unconstitutionally overbroad or vague and is therefore valid. *See Grayned v. City of Rockford*, 408 U.S. 104, 33 L. Ed. 2d 222 (1972) (although "noise . . . which disturbs or tends to disturb" are vague terms, they are not unconstitutionally

vague because Court could expect, based on decisions of state court construing similar terms, that state court would give a reasonable, valid and objective construction to terms); *Reeves*, 631 F.2d 377 (based on expectation state court will interpret "disturbing . . . to persons within the area of audibility" objectively, ordinance is constitutional); *City of Madison v. Baumann*, 470 N.W.2d 296 (Wis. 1991) (prohibiting noise tending to unreasonably disturb peace and quiet of persons in vicinity was not unconstitutionally vague because ordinance imposed reasonable person standard that had long been relied on in all branches of law); *City of Marietta v. Grams*, 531 N.E.2d 1331 (Ohio App. 1987) (disturbing order and quiet by clamors or noises at night was not unconstitutionally vague because ordinance could reasonably be construed to outlaw loud continuous noise offensive to reasonable person's common sensibilities and disruptive to basic nighttime activities); *Hooks v. Speedways, Inc.*, 263 N.C. 686, 691-92, 140 S.E.2d 387, 392 (1965) (whether noise rises to level of nuisance depends on their effect, "not on peculiar and unusual individuals but on ordinary, normal and reasonable persons of the locality"); *Jones v. Speedways, Inc.*, 276 N.C. 231, 239-40, 172 S.E.2d 42, 47-48 (1970) (quoting objective standard from *Hooks*); *Trap Rock*, 442 N.E.2d at 1226-27 (defining "unnecessary noise" as "any excessive or unusually loud sound . . . which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of a person" is unconstitutionally vague; conviction could be supported on "malice or animosity" or "boiling point" of a particular person); *see also Kovacs v. Cooper*, 336 U.S. 77, 79, 93 L. Ed. 513, 518, *reh'g denied*, 336 U.S. 921, 93 L. Ed. 1083 (1949) (terms "loud and raucous" constitutionally valid because "[w]hile these are abstract words, they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden"); *State v. Dorsett*, 3 N.C. App. 331, 335, 164 S.E.2d 607, 610 (1968) (citing *Kovacs* to uphold noise ordinance against vagueness challenge). If, however, "actual experience" with Section 1-1(a) "were to demonstrate that it represents a subjective standard . . . we would not hesitate to change our judgment accordingly." *Reeves*, 631 F.2d at 386. We expect that the ordinance will be enforced based on this objective standard; therefore, there must be some evidence at trial based on this objective standard to support a conviction under Section 1-1(a). Examples include testimony that a person could not hear a person standing next to them or that furniture or windows were rattling from vibrations created by the noise. *See Dorsett*, 3 N.C. App. 331, 164 S.E.2d 607 (State's evidence under noise ordinance showed occupant of house

could not hear her television, windows of occupant's house rattled, and person sitting beside occupant on porch could not hear him, all because of noise from motorcycles).

For these reasons, the district court did not err in declaring Section 1-1(b)(3) to be unconstitutional. This partial unconstitutionality of Jackson County's noise ordinance, however, does not support the granting of Denny and Garren's motions to dismiss the charges, and the trial court erred in allowing their motions. Section 1-1(a) remains a valid and enforceable ordinance, and the State is entitled to proceed with the prosecution of Denny and Garren under this ordinance.

Reversed and remanded.

Judges JOHN and McCRODDEN concur.

Judge McCRODDEN concurred in this opinion prior to 15 December 1994.