STATE OF NORTH CAROLINA v. WILLIAM SAMUEL TAYLOR

No. COA97-136

(Filed 17 February 1998)

**Counties § 91 (NCI4th)— animal noise ordinance—not unconstitutionally vague—barking dogs—violation of ordinance**

A county ordinance making it "unlawful for any person to own, keep, or have in the county an animal that habitually or repeatedly makes excessive noises that tend to annoy, disturb, or frighten its citizens" is not unconstitutionally vague or indefinite.

STATE v. TAYLOR

[128 N.C. App. 616 (1998)]

Furthermore, the jury's verdict finding defendant guilty of violating the ordinance based on the barking of his hound dogs was not arbitrary or subjective.

Appeal by defendant from judgment entered 24 July 1996 by Judge William C. Griffin, Jr. in Martin County Superior Court. Heard in the Court of Appeals 23 October 1997.

*Attorney General Michael F. Easley, by Bart Njoku-Obi, Associate Attorney General, for the State.*

*E. Keen Lassiter, for defendant-appellant.*

McGEE, Judge.

Defendant was charged with violating the Martin County Animal Control Ordinance, Section VI: Noisy Animals for the offense of Excessive Noises by Dogs in a misdemeanor criminal summons issued 22 December 1995.

Evidence presented at trial showed that from 1960 to 1995 defendant kept dogs on his property. However, it was not until 1991, when defendant started keeping walker hounds, that neighbors complained of excessive barking. Testimony showed that a particular trait of walker hounds is that the hounds tend to bark when they tree a raccoon and they do not stop barking until their owner arrives. In addition, they are bred to have a very loud bark that can be heard from great distances so that a hunter can track them.

On 5 September 1995, defendant's neighbor filed a complaint with a Martin County Animal Control Officer stating that the barking noises from defendant's dogs were keeping her up at night and disturbing her early in the morning. On 20 September 1995, defendant was issued a Notice of Warning for his barking dogs by the Martin County Animal Control Office. More complaints were filed by neighbors on 8 December 1995 and 15 December 1995. On 8 December 1995, defendant was issued a Notice of Violation and was subsequently charged with being in violation of the county animal control ordinance.

At trial, defendant's neighbors testified that the barking kept them up at all hours of the night, that they were restricted from opening their windows and doors during periods of warm weather, and that they lost countless hours of sleep. The barking was described as "relentless," "incessant," and lasting "24 hours a day almost." A jury

found defendant guilty of violating the county animal control ordinance on 24 July 1996. Defendant was sentenced to imprisonment for one day, suspended for eighteen months; it was further ordered that the "[d]ogs be removed from their present location . . . ." Defendant appeals.

Defendant argues that the trial court erred in denying his motion to dismiss. He contends that the Martin County Animal Control Ordinance, Section VI: Noisy Animals is unconstitutional for vagueness, indefiniteness, and its lack of an objective standard to determine if the ordinance has been violated. We disagree.

North Carolina General Statute § 153A-121(a) (1991) grants counties the general power to enact ordinances, stating that "[a] county may by ordinance define, regulate, prohibit, or abate acts, omissions, or conditions detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the county; and may define and abate nuisances." A county is given further power to regulate noises in N.C. Gen. Stat. § 153A-133 (1991) which allows a county to "regulate, restrict, or prohibit the production or emission of noises or . . . other sounds that tend to annoy, disturb, or frighten its citizens." As with any power granted to a government entity, however, it is still necessary that in using its powers, the constitutional rights and guarantees of its citizens are not infringed upon.

The Martin County ordinance specifically reads: "It shall be unlawful for any person to own, keep, or have within the county an animal that habitually or repeatedly makes excessive noises that tend to annoy, disturb, or frighten its citizens." Defendant argues that the ordinance, as written, is unconstitutionally vague and indefinite in that it is difficult to determine what constitutes excessive noise and when citizens are annoyed, disturbed, or frightened.

We readily acknowledge that "[n]oise ordinances present a great deal of problems in drafting and enforcing them because '[t]he nature of sound makes resort to broadly stated definitions and prohibitions not only common but difficult to avoid.' " *State v. Garren*, 117 N.C. App. 393, 395-96, 451 S.E.2d 315, 317 (1994) (*quoting People v. New York Trap Rock Corp.*, 442 N.E.2d 1222, 1226 (N.Y. 1982)). However, it is a basic rule of construction that "[a] statute or ordinance is presumed to have meaning and will be upheld if its meaning is ascertainable with reasonable certainty by proper construction. If a statute is susceptible to two interpretations, one constitutional and the other

unconstitutional, the former will be adopted." *State v. Dorsett*, 3 N.C. App. 331, 335, 164 S.E.2d 607, 609 (1968) (citations omitted).

Martin County's Animal Control Ordinance contains general terms in describing prohibited conduct. However, these terms also have commonly accepted meanings and are sufficiently certain to inform persons of ordinary intelligence as to what constitutes a violation. *See Dorsett*, 3 N.C. App. at 336, 164 S.E.2d at 610. Even though words such as "habitual," "repeated," and "excessive" are abstract words, they have through their daily use become meaningful so that the average person should have a sense of what is prohibited. *Id.* at 335, 164 S.E.2d at 610. This Court has held similar ordinances to be constitutional in the past. In *Garren*, the Jackson County noise ordinance defined "loud, raucous and disturbing" noise as any sound which "annoys, disturbs, injures or endangers the comfort, health, peace or safety of reasonable persons of ordinary sensibilities." *Garren*, 117 N.C. App. at 394, 451 S.E.2d at 316. We held that the ordinance did "not reach more broadly than is reasonably necessary to protect legitimate state interests . . . [and] is not unconstitutionally overbroad or vague and is therefore valid." *Id.* at 397, 451 S.E.2d at 318-19. In *Dorsett*, the ordinance at issue was held to be valid despite the fact that it did not define in decibels the intensity of the noises that were prohibited. *Dorsett*, 3 N.C. App. at 336, 164 S.E.2d at 610. The Court held that "such exactness is not required." *Id; see also State v. Winkelman*, 545 P.2d 601, 601 (Or. App. 1976) (statute that declared a dog that "[d]isturbs any person by frequent or prolonged noises" is a public nuisance held not to be unconstitutionally vague). Thus, despite the Martin County ordinance's use of general terms, we do not find it to be unconstitutionally vague or indefinite.

With regard to enforcement of the ordinance, defendant claims that it is difficult to determine what animal noises amount to being habitual, repeated, or excessive and that, therefore, it cannot be determined when a violation has occurred. Our Supreme Court has stated that in determining whether the terms of a criminal statute are sufficiently explicit to inform those who are subject to it what conduct on their part will render them "liable to its penalties," reasonable certainty is sufficient. *Surplus Store, Inc. v. Hunter*, 257 N.C. 206, 211, 125 S.E.2d 764, 768 (1962). In *State v. Hales*, 256 N.C. 27, 34, 122 S.E.2d 768, 773 (1961) our Supreme Court held the provisions of the statute being reviewed were sufficiently definite to inform "a person of ordinary intelligence with reasonable precision what acts it . . . prohibit[s]." Furthermore,

[a] criminal statute is not rendered unconstitutional by the fact that its application may be uncertain in exceptional cases, nor by the fact that the definition of the crime contains an element of degree as to which estimates might differ, or as to which a jury's estimate might differ from that of the defendant, so long as the general area of conduct against which the statute is directed is made plain. It is not violative of due process of law for a legislature in framing its criminal law to cast upon the public the duty of care and even of caution, provided there is sufficient warning to one bent on obedience that he comes near the proscribed area. Nor is it unfair to require that one who goes perilously close to an area of proscribed conduct take the risk that he may cross the line.

21 Am. Jur. 2d, *Criminal Law* § 17 (1981).

The terms in the Martin County Animal Control Ordinance—"habitually," "repeatedly," "excessive," "annoy," "disturb," or "frighten"—have common ordinary meanings by which to understand and measure the noise of a particular animal. An ordinance must be enforced based upon an objective standard; "therefore, there must be some evidence at trial based on this objective standard to support a conviction under [it]." *Garren,* 117 N.C. App. at 398, 451 S.E.2d at 319. It is reasonable to expect that the trial court would provide a valid and objective construction to such terms that, while general, also have a common meaning. *See Grayned v. City of Rockford,* 408 U.S. 104, 110, 33 L. Ed. 2d 222, 228 (1972); *see also Reeves v. McConn,* 631 F.2d 377, 386 (1980), *reh'g denied,* 638 F.2d 762 (5th Cir. 1981) ("in the expectation that a state court would interpret the [general] term objectively" the ordinance is not unconstitutionally vague or overbroad); *City of Marietta v. Grams,* 531 N.E.2d 1331, 1332 (Ohio App. 1987) ("ordinance could reasonably be construed to ban loud and continuous noise offensive to reasonable person of common sensibilities and thus was not unconstitutionally vague for failure to specify time for duration of clamor or noise it was intended to prohibit"); *State v. Friedman,* 697 A.2d 947, 950 (N.J. Super. Ct. App. Div. 1997) ("As numerous decisions regarding such ordinances make clear, such general language is permissible so long as courts utilize a reasonableness standard when applying it").

On several occasions between September and December 1995, defendant was given notice of the noise problems that his dogs were creating when his neighbors complained to the county. In addition, he

FENZ v. DAVIS

[128 N.C. App. 621 (1998)]

was first given an official warning several months before any notice of violation was issued. In reviewing plenary evidence presented at trial of the habitual excessive noises caused by defendant's dogs and considering the common meanings of the words in the ordinance, the determination by the jury of a violation was not arbitrary or subjective.

The Martin County Animal Control Ordinance Section VI: Noisy Animals is not unconstitutional for vagueness or indefiniteness and the trial court was correct in denying defendant's motion to dismiss.

No Error.

Judges LEWIS and MARTIN, John C., concur.