CITY OF MARIETTA, APPELLEE, *v.*
GRAMS, APPELLANT.

(No. 86 CA 12—Decided
July 2, 1987.)

*Brian R. Walker,* for appellee.
*Redmond, Jones & Lane* and *N.
Edward Lane, Jr.,* for appellant.

STEPHENSON, J. This is an appeal
from a judgment entered by the Mari-
etta Municipal Court after a bench trial
finding Janet Joyce Grams, defendant
below and appellant herein, guilty of
violating Marietta Municipal Code Sec-
tion 509.08, which proscribes disturb-
ing the peace of the municipality. Ap-
pellant assigns the following errors:

"I.   Section 509.08 of the Mariet-
ta Municipal Code is unconstitutionally
vague in that it does not sufficiently
describe conduct so as to enable one to
determine objectively what action
violates its provisions in violation of
the First Amendment of the Constitu-
tion of the United States of America,
the Fifth Amendment of the Constitu-
tion of the United States of America,
and the Fourteenth Amendment of the
Constitution of the United States of
America, and the Constitution of the
State of Ohio due process provisions.

"II.   The plaintiff-appellee failed
to prove any act by the defendant that
violates the statute and any intent of
the defendant to violate the statute in
question."

The record reflects that on Sep-
tember 14, 1985, a birthday party was
held at the residence of Dr. Mark
Grams and appellant located at 524
Second Street in Marietta, Ohio. The
event was for appellant's son, Travis
Grams, sixteen, who organized the
party and paid for the musical enter-
tainment, which was provided by
"Rockola" through the use of a sound-
amplifying system. Prior to the date of
the party, Travis Grams notified the
neighbors and the police department of
the party, leaving the Gramses' phone
number with the latter in case there
were any problems. Approximately
thirty-five guests attended the party,
which began around eight in the even-
ing.

Throughout the course of the even-
ing, the Marietta City Police Depart-
ment received complaints of loud
music coming from the Second Street
area in Marietta. In response, Dispat-
cher Robert Lee Heddleston tele-
phoned the Gramses' residence and in-
formed appellant of the complaints.
When the complaints persisted, Officer
Kevin Burns was dispatched to the
Gramses' residence around 9:00 p.m.
Officer Burns was directed to ap-
pellant upon his arrival. He advised her
of the complaints and requested that
the volume of the music be turned
down. Officer Burns departed after his
request was met.

Thereafter, the police department continued to receive complaints about the loud music emanating from the same area. Consequently, Officer Charles G. Scott was dispatched to the Gramses' residence around 11:00 p.m. He was directed to appellant, after which he cited her for disturbing the peace in violation of Marietta Municipal Code Section 509.08.

After trial on October 16, 1985, the court below entered its decision on February 27, 1986, finding appellant guilty of violating the ordinance. A judgment entry journalizing this decision was filed on March 5, 1986. Appellant thereafter timely appealed to this court.

Appellant's first assignment of error argues that Marietta Municipal Code Section 509.08 is unconstitutionally vague. She contends that one is prevented from determining what action will be in violation of this section in that it does not sufficiently describe the conduct to be prohibited. As a result, appellant asserts that her due process rights, provided for in the United States and Ohio Constitutions, were violated. Section 509.08 reads as follows:

"(a) No person shall disturb the good order and quiet of the Municipality by clamors or noises in the night season, by intoxication, drunkenness, fighting, quarreling, wrangling, committing assault, assault and battery, using obscene or profane language in the streets and other public places to the annoyance of the citizens, or otherwise violating the public peace by indecent and disorderly conduct, or by lewd and lascivious behavior, or by threatening or inflicting violence or abuse to the person or property of others.

"(b) Whoever violates this section is guilty of a minor misdemeanor."

The relevant rules applicable in considering a constitutional vagueness attack upon a legislative enactment are succinctly set forth in *State* v. *Dorso* (1983), 4 Ohio St. 3d 60, 61-62, 4 OBR 150, 151, 446 N.E. 2d 449, 450-451:

"It is axiomatic that all legislative enactments enjoy a presumption of constitutionality. *Benevolent Assn.* v. *Parma* (1980), 61 Ohio St. 2d 375, 377 [15 O.O. 3d 450]; *State, ex rel. Taft,* v. *Campanella* (1977), 50 Ohio St. 2d 242, 246 [4 O.O. 3d 423]; *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142 [57 O.O. 134], paragraph one of the syllabus. Similarly uncontroverted is the legal principle that the courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional. *State* v. *Sinito* (1975), 43 Ohio St. 2d 98, 101 [72 O.O. 2d 54]; *Wilson* v. *Kennedy* (1949), 151 Ohio St. 485, 492 [39 O.O. 301]; *Eastman* v. *State* (1936), 131 Ohio St. 1 [5 O.O. 248], paragraph four of the syllabus. Specifically, as to challenges to a statute based upon its alleged vagueness, the United States Supreme Court has stated, '* * * [I]f this general class of offenses [to which the statute applies] can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction.' *United States* v. *Harriss* (1954), 347 U.S. 612, 618. Thus, we are obligated to indulge every reasonable interpretation favoring the ordinance in order to sustain it.

"The court, in *Harriss,* also articulated the standard to be followed in determining whether a statute is impermissibly vague or indefinite. The court wrote: 'The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.' *United States* v. *Harriss, supra,* at page 617. See, also, *Marks* v. *United States*

(1977), 430 U.S. 188, 191; *Parker* v. *Levy* (1974), 417 U.S. 733.

"A statute or ordinance is not necessarily void for vagueness, however, merely because it could have been more precisely worded. *Roth* v. *United States* (1957), 354 U.S. 476, 491; *United States* v. *Petrillo* (1947), 332 U.S. 1, 7-8. The Constitution does not mandate a burdensome specificity. As the United States Supreme Court observed in *Rose* v. *Locke* (1975), 423 U.S. 48, at pages 49-50, the '* * * prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.' *Robinson* v. *United States,* 324 U.S. 282, 286 (1945).' In the case at bar, the challenged ordinance cannot reasonably be described as so indefinite as to be constitutionally repugnant."

The vice of a vague ordinance is that it not only fails to give notice of the prohibited conduct, but also encourages arbitrary and erratic arrests and convictions. *Papachristou* v. *City of Jacksonville* (1972), 405 U.S. 156.

Efforts to lawfully proscribe, by legislative enactment, disturbance of the peace and tranquility of a community have long existed and resulted in variously worded legislation, followed by a myriad of court decisions as to the constitutionality and application of such noise statutes and ordinances. The following is stated in *People* v. *Waterloo Stock Car Corp.* (1977), 392 N.Y. Supp. 2d 839, 841, 89 Misc. 922, 925.

"Dealing with the problem of noise is not new in the law. Holding that sounds of revelry, tumult, shouting, drums and brasses at night which disturbed the sleep of dwellers in the neighborhood was sufficient to sustain a conviction for maintaining a public nuisance, CARDOZO, Ch. J., cited *Rex* v. *Smith* (1726) 2 Strange, 704, 'Long ago it was adjudged that one dwelling in a city, who with the aid of a speaking trumpet made great noises in the night time to the disturbance of the neighborhood, must answer to the king.' (*People* v. *Rubenfeld,* 254 N.Y. 245, at 248, 172 N.E. 485, at 486.)"

No issue is raised in this appeal as to the authority of the city to enact ordinances respecting disturbance of the peace, nor is constitutional overbreadth claimed. The ordinance in question utilizes the same language as R.C. 715.55, which authorizes such regulation by a municipality although such authority now exists pursuant to Ohio constitutional home rule. *Akron* v. *Criner* (1960), 112 Ohio App. 191, 16 O.O. 121, 175 N.E. 2d 746.

The city of Marietta has included in the ordinance various proscriptions against disturbing the peace. At issue here is the portion providing that "[n]o person shall disturb the good order and quiet of the Municipality by clamors or noises in the night season * * *."

Admittedly, other than restricting the violation to the "night season," the ordinance does not delineate the type or duration of the clamor or noise which it was intended to prohibit. Since it is our duty to uphold the ordinance if it can be made constitutionally definite by a reasonable construction, we are required to so construe it. *United States* v. *Harriss, supra.*

In *Dorso, supra,* the court upheld a noise ordinance against a vagueness claim based upon ordinance language proscribing the playing or rendition of music of any kind, singing, loud talking, amplification of sound, and other noises "in such a manner to disturb the peace and quiet of the neighborhood * * *." The court stated the following

at 63, 4 OBR at 153, 446 N.E. 2d at 452:

"* * * [H]ere we adopt the approach taken by our counterpart in *State* v. *Chaplinsky* (1941), 91 N.H. 310, 18 A. 2d 754, and subsequently endorsed by the United States Supreme Court in *Chaplinsky* v. *New Hampshire* (1942), 315 U.S. 568. In appraising the constitutionality of a statute which criminalized directing 'offensive, derisive or annoying' words to another, the New Hampshire court interpreted the statute so as to obviate any potential ambiguities. The New Hampshire court, at page 320, stated: 'The word "offensive" is not to be defined in terms of what a particular addressee thinks. * * * The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight.' The United States Supreme Court cited the identical passage in affirming the state court's decision and rejecting claims of the *Chaplinsky* statute's unconstitutionality. *Chaplinsky* v. *New Hampshire* (315 U.S.), at page 573.

"Following the persuasive lead of the *Chaplinsky* tribunals, we construe the Cincinnati ordinance at issue to prohibit the playing of music, amplification of sound, etc., in a manner which could be anticipated to offend the reasonable person, *i.e.*, the individual of common sensibilities. Specifically, we find the ordinance to proscribe the transmission of sounds which disrupt the reasonable conduct of basic human activities, *e.g.*, conversation or sleep. Our construction of the ordinance does not permit the imposition of criminal liability upon a party whose conduct disturbs only the hypersensitive. Thus, the standard hereby adopted vitiates the claimed vagueness of the ordinance."

Further, we notice that Marietta Municipal Code Sections 501.07(b) and 501.08(c), identical with R.C. 2901.21 (B) and 2901.22(C), read as follows:

"(b) When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."

"(c) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

Given the enumeration of the conduct proscribed in the ordinance under which appellant was convicted, and since the ordinance does not plainly indicate a purpose to impose strict liability, "recklessness" is the required culpable mental state to constitute a violation. To hold otherwise would make criminal such things as noise or disturbance from the collapse of a homeowner's roof at night, an automobile collision, and the like.

While the ordinance under consideration does not enumerate the nature of the nighttime "noise" intended to be proscribed, some indication of the legislative intent can be gained from the word "clamor" which is also proscribed. Among the definitions of "clamor" set forth in Webster's Third New International Dictionary (1986) 414 are "the loud and continued uproar of many human voices" and "a loud continued and usu. confused noise (as of animals, birds, musical instruments * * *)." It is reasonable to assume that the "noise" intended to be proscribed was of like

character, at least as to being loud and continuous.

Finally, while the words "night season" are not defined in the ordinance, given the intent of the ordinance, it is equivalent to "nighttime" which by dictionary definition is the time "from dusk to dawn." Webster's Third New International Dictionary (1986) 1528. It has also been legally defined in the context of burglary offenses as " '* * * that period of time between termination of daylight in the evening to the earliest dawn of the following morning; that period of time from the setting of the sun to the rising of the sun in the morning, when the face of man is no longer discernible.' " *State* v. *Stuttler* (1961), 172 Ohio St. 311, 312, 16 O.O. 2d 101, 102, 175 N.E. 2d 728, 730. Further specificity with respect to time is not required.

In summary, we construe Marietta Municipal Code Section 509.08 to be violated when, with the culpable mental state of recklessness, one, by his conduct, produces loud and continued noise which offends a reasonable person of common sensibilities and disrupts the reasonable conduct of basic nighttime activities such as sleep. So construed, it gives sufficient notice of what conduct is proscribed for one to be law abiding.

The first assignment of error is overruled.

Appellant's arguments in support of the second assignment of error are twofold. First, it is argued that the statute should be construed to require a specific intent upon the part of appellant to violate the ordinance. We have concluded under the first assignment of error that the culpable mental state required for conviction is recklessness as that term is defined in Section 501.08(c), *supra.*

It is further contended that no act or omission by appellant violated the ordinance, the violation, if any, being that of the minor child, Travis Grams.

The record reflects that appellant and her husband were aware of the possibility, if not probability, that neighbors would be disturbed by the amplified music. Commendably appellant and her husband required notification of neighbors as well as notification to the police department of a proposed party. However, such notification does not justify a violation of the ordinance.

We note that on both occasions when the Marietta City Police officers were dispatched to the Gramses' residence, appellant represented to them that she was in charge. Appellant is part owner of the residence and represented to the officers that she maintained authority over the events therein. By such admission appellant could be fairly held to have violated the ordinance.

The second assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

ABELE and GREY, JJ., concur.